# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JENNIFER BARBER HAMBLIN, )
)
    Plaintiff, )
)
v. )         NO. 3:08-00196
)         JUDGE HAYNES
ITT EDUCATIONAL SERVICES, INC. )
d/b/a/ ITT TECHNICAL INSTITUTE, )
)
    Defendant. )

## MEMORANDUM

Plaintiff, Jennifer Barber Hamblin, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., against the Defendant, ITT Educational Services, Inc. d/b/a/ ITT Technical Institute ("ITT"). In essence, Plaintiff alleges she was subject to denials of promotion, hostile work environment, and retaliatory discharge due to her gender in violation of Title VII. After the Defendant's answer, the parties proceeded with discovery.

Before the Court are Defendant's motion for summary judgment (Docket Entry No. 43) and Plaintiff's motion to supplement her response to summary judgment (Docket Entry No. 64). In its motion for summary judgment, Defendant asserts, in sum: (1) that Plaintiff's 2005 claims for denial of promotion to Director of Recruitment ("DOR"), pre-June 2006 claims for denial of promotion to Master IV status, and pre-June 2006 hostile work environment claims are time-barred; (2) that Plaintiff failed to make out a prima facie case of sex discrimination; (3) that even if Plaintiff does establish a prima facie case, the Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff; and (4) that Plaintiff cannot show that the Defendant's adverse

-1-

employment action against her was pretextual.

In her response, Plaintiff asserts that the alleged discriminatory actions were continuing violations of Title VII and therefore not time-barred. Plaintiff further argues that she has established a prima facie case of sex discrimination, and also asserts that the Defendant's proffered non-discriminatory reason for terminating the Plaintiff was pretextual.

For the reasons set forth below, Plaintiff's motion to supplement her response to summary judgment should be granted. Plaintiff's various claims for discrimination under Title VII must fail. The Court also concludes that Plaintiff's denial of promotion claims are time-barred, that Plaintiff fails to establish a prima facie case of discrimination, and also fails to rebut the Defendant's proffered legitimate non-discriminatory reasons for denying the promotion. As to the hostile work environment claims, Plaintiff has failed to establish a prima facie case of gender-based discrimination. Finally, Plaintiff's discriminatory and retaliatory discharge claims also fail because Plaintiff has failed to offer any evidence or reasoning rebutting the proffered legitimate non-discriminatory reasons for her termination. Thus, there are not any genuine issues of material fact, and the Defendant's motion for summary judgment should be granted.

## I. FINDINGS OF FACT[1]

Plaintiff worked at ITT's Nashville, Tennessee school as a recruiter during three different

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under the applicable law, the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

-2-

time periods. Hamblin's third and last period of employment at ITT was from the fall of 2003 through her termination on January 12, 2007. (Docket Entry No. 48, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 3). ITT has written policies prohibiting discrimination or harassment based on race or color, and it is against ITT policy to make negative comments about any race. Id. at ¶ 8. The ITT Employee Handbook also states that violations of ITT work guidelines, policies, regulations, or procedures may result in disciplinary action up to and including termination, that no ITT employee is entitled to or should expect to receive progressive discipline, and that ITT is under no obligation to provide progressive discipline to any employee. Id. at ¶ 17. The handbook further states that if ITT "determines in its sole discretion, that the employee's acts are sufficiently serious, the employee's ITT/ESI employment may be immediately terminated." Id. at ¶ 18.

In 2004, Plaintiff complained to the school director, James Coakley, that her supervisor, James Royster, told her that she would get better results if she wore shorter skirts, that she was not endowed with long legs, and needed to wear shorter skirts to accent what she had. (Docket Entry No. 53, Hamblin Deposition, at pp. 116-23). After Royster apologized, Coakley concluded that Hamblin misinterpreted what Royster meant. Id. Later, an incident occurred wherein a female coworker accused Coakley of having an affair with Hamblin, and Hamblin was also accused of spreading rumors that a manager of recruitment, Glenn Wallace, was having an affair with another recruiter. (Docket Entry No. 50, Coakley Deposition, at pp. 17-20; Docket Entry No. 49, Wallace Deposition, at pp. 48-49). The conflict escalated, and insults were exchanged by Hamblin and others, with Hamblin allegedly stating to a coworker, "you can kiss my white ass." (Docket Entry No. 49, Wallace Deposition, at pp. 54, 65-66). Neither Wallace, an African-

American, nor Coakley disciplined any of the female recruiters involved in the altercation. (Docket Entry No. 50, Coakley Deposition, at pp. 17-19; Docket Entry No. 49, Wallace Deposition, at pp. 57-58).

Shortly after this incident, Hamblin received threatening telephone calls and harassment from co-workers, generally described by Plaintiff as "taunting" and "comments," though Plaintiff does not specify what this included with the exception of being told that she "wasn't a team player." (Docket Entry No. 53, Hamblin Deposition, at pp. 134-35). Plaintiff also alleges that the harassment included pictures and daytimers disappearing from her desk. Id.

In the summer of 2005, Plaintiff applied for the position of DOR after Royster was terminated for having an affair with a coworker. (Docket Entry No. 64-1, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, at p. 4). Although Plaintiff was qualified for the position, the DOR position was given to Glenn Wallace. Id. Plaintiff alleges that she was told by Coakley that he could not appoint a woman to the job because ITT needed a man with more perceived authority for the position. (Docket Entry No. 53, Hamblin Deposition, at pp. 134-35). Plaintiff further alleges that harassment continued at work, by both coworkers and Coakley, including unspecified comments and taunting that "became so unbearable by some individuals that they moved [Plaintiff] out in a hallway in a room by myself." Id. at 134-35.

On April 14, 2006 (more than 300 days before her charge) Hamblin requested that Coakley and Wallace review what Hamblin believed to have been an error by ITT in crediting the school start of a student Hamblin recruited. (Docket Entry No. 48, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 10). According to Hamblin, the error caused her numbers to fall just short of those needed for promotion to Master IV recruiter status.

-4-

Id. Coakley contacted his superior, District Manager Jerden, who responded to Hamblin by e-mail on May 9, 2006. Id. Coakley, in discussing the matter with Hamblin at some point during the foregoing process, told her he felt Hamblin didn't deserve a promotion because she had not been focused enough on the September 2005 school start and had been too focused on getting credit for the single student in question. Id. at ¶ 11. On May 17, 2006, Hamblin appealed the decision to ITT headquarters. Before receiving a response, Hamblin wrote directly to ITT's President on June 8, 2006. Id. at ¶ 12. The appeal was rejected and the matter was closed by ITT on July 31, 2006. Id. at ¶ 13.

In December 2007, Wallace voluntarily quit his position as DOR, and Hamblin again applied for the position to Manager of Recruitment Lawrence Hawkins at 2:10 P.M. on January 10, 2007. Id. at ¶¶ 61-62. One day earlier on January 9, 2007, the ITT district manager received a forwarded e-mail from a coworker of Hamblin, Rita Paladini. Id. at ¶ 20. In that e-mail, Paladini stated, in relevant part:

> In addition has made many prejudice comments that are offensive not only to me but to other employees here [sic]. I will document the comments below.
>
> She stated to me that there is a major problem here because ITT Tech needed to hire several black people because of the law. The DOR, MOR and everyone who followed is black and they rule this school. They all stick together and do several underhanded things to the white representatives and I will find that I have to fight for my leads. She finds that to the biggest problem because only white people here are Master Representatives because the black people don't know how to do their job, nor are they trained properly.
>
> After going on about the racism here, she added that several employees were accused of having affairs and inappropriate behavior both in work and at functions. She became very detailed of how people dress, talk, drink, and act.
>
> The day after all of this was said, she added to me that she needed me to know that I should be aware that she has an attorney and is documenting everything that

-5-

she feels is unfair business practice against her. She is also assisting a family who is putting a law suit against ITT Nashville because their son who was a student here, committed suicide and you as the director of this school refused to allow the parents to come into the schools property.

I put up the pictures of my children and grandson next to my desk. Of course they are visual so anyone can see them. I am very proud to display those pictures. While coming into the office, Jennifer was on her cell phone saying to whomever she was speaking to "oh my god, I went on and on about the black people here to the new girl and she hangs pictures on the wall and her kids and grandson are half breeds". I was truly offended. In being new at this campus and knowing the type of person she was, I chose to yet ignore this as well. But it did not stop. The same day, she started to talk to me about my religion. I told her I was catholic and she asked that since I believe in God and Jesus to please do not shop at several stores such as Target, Home Depot and others because these stores donate to the lesbian and gay task force and we as Christians should not contribute to anyone who does. I did reply to her by saying that my faith has nothing to do with my position here and that I just want to come here, do my job and go home. Most things that she says I feel are irrelevant to our job.

We got a new office mate and on the first day the young lady came in to work with us, Jennifer came into the office acting very angry and stating loudly that she is sick of the black people here and the attitudes they have. The new young lady looked at me and said "Isn't an attitude and attitude no matter what color they are?" I apologized to the young lady for Jennifer's actions and reported it to Lawrence. I now feel with this being an ongoing and every day occurrence it is becoming a very discouraging place to work.

Id.

ITT Human Resources became involved in the investigation that day, and informed Hamblin of the same. Id. at ¶¶ 23-26. Hamblin commented to the ITT investigator that Paladini had phone conversations in the office with her husband that were of a sexual nature, although Hamblin later did not complain about this behavior in her EEOC complaint. Id. at ¶¶ 28-30. Hamblin denied making any racist comments. Id. at ¶ 33. After a number of conversations with different employees, the ITT investigator corroborated Paladini's account of Hamblin's comments with other employees and another employee denied that Paladini had phone

-6-

conversations of a sexual nature with her husband. Id. at ¶¶ 34-35. The ITT investigator concluded that Hamblin had made repeated racial and other inappropriate statements while at work on the ITT campus and recommend that Hamblin be terminated. Id. at ¶¶ 38-39.

After sharing her conclusions with ITT's President of Operations and the District Manager working above Hamblin, the managers collectively concurred and decided to terminate Hamblin. Id. at ¶¶ 39-41. Nashville school director Coakley played no role in the decision to terminate Hamblin. Id. at ¶ 44. Hamblin believes one of the reasons she was terminated was as retaliation for an instance in June 2006 when she complained to headquarters that school director Coakley had yelled at Hamblin in front of employees after Hamblin had invited a TV crew onto the campus parking lot regarding a missing student. Id. at ¶ 54. Otherwise, Hamblin cited "harassment," "jealously," and "whistle-blowing" as the reasons for her termination, but can cite to no issues of a sexual nature besides the incidents involving Coakley regarding the shorter skirts comment or needing a man in the DOR position from 2004-05. Id. at ¶¶ 55-59.

Finally, no one within ITT who was involved in the decision to terminate Hamblin was aware that she was interested in the DOR position. Id. at ¶¶ 61-66. After being terminated, Hamblin filed her EEOC charge on March 26, 2007. Id. at ¶ 9. May 31, 2006 is the 300th day prior to the date that Hamblin filed her EEOC Charge. Id.

## II. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua

sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data

-8-

Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

-9-

The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

* * *

Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

-10-

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990).

-11-

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1.    Complex cases are not necessarily inappropriate for summary judgment.

2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.    The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment.  The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.    As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.    The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence.  The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.'  Further, '[w]here the

-12-

record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## A. Motion to Supplement

The Court first address Plaintiff's motion to supplement her response to summary judgment (Docket Entry No. 64). It appears to the Court that Plaintiff's counsel intended to file the brief in question along with a multitude of filings that occurred on February 20 and 23, 2009. Defendant, despite its protestations otherwise, has demonstrated no prejudice to itself if the Court considers Plaintiff's arguments within its brief in opposition to the motion for summary judgment. As such, Plaintiff's motion to supplement her response should be granted, and the Court will consider the arguments contained therein below.

## B. Statute of Limitations

Defendant first argues that a number of Plaintiff's claims for sex discrimination are time-barred by the applicable statute of limitations as a number of the claims occurred before 300 days of Plaintiff's filing of her EEOC complaint. Plaintiff responds that while some events did occur

-13-

more than 300 days before her filing of the EEOC complaint, they were part of the "continuing violations" by the Defendant and thus subject to equitable tolling.

A plaintiff must file a charge of discrimination with the EEOC or a state agency as a condition precedent for a Title VII action. Zipes v. T.W.A., 455 U.S. 385, 392-98 (1982). The charge must be filed within 300 days after the alleged discriminatory practice occurred. Austion v. City of Clarksville, 244 Fed. Appx. 639, 647 (6th Cir. 2007). However, courts have also allowed a tolling of the 300 day statute of limitations under a "continuing-violations" theory. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The Sixth Circuit has noted that the continuing violations doctrine applies to "discrete discriminatory acts that are part of a longstanding and demonstrable policy of discrimination." Austion, 244 Fed. Appx. at 647.

To prove a longstanding and demonstrable policy of discrimination, the plaintiff must demonstrate more than discriminatory treatment in his or her case, namely that "the employer's 'standard operating procedure' included intentional discrimination against the class of which plaintiff was a member." Id. (internal quotations omitted). "'Unrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing over-arching policy of discrimination.'" Id. (quoting LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1106 (6th Cir.1995)). This exception "is strictly construed and is satisfied only where the defendant has a known policy or rule supporting discrimination." Id.

Other than the comments regarding a shorter skirt and the denial of promotion to the DOR position in 2005, Plaintiff has presented no evidence demonstrating that ITT's standard operating procedure included intentional discrimination against women. Although these discrete acts might constitute individual discriminatory acts if proven, the Title VII statute requires an

-14-

EEOC charge to be filed within 300 days of those acts. Plaintiff did not file her discrimination charge with the EEOC until March 26, 2007. As such, Plaintiff's claims regarding the shorter skirt comments and the denial of promotion to the DOR position in 2005 are time-barred and Defendant is entitled to summary judgment with regard to those claims. Finally, the denial of promotion to Master IV status claim is not time-barred because a final decision on that matter was not issued by Defendant until July 31, 2006, well within 300 days of Plaintiff's EEOC charge.

As to Plaintiff's hostile work environment claims, however, the 300 day limitation does not apply because the Sixth Circuit analyzes such claims under a different standard than the one utilized for discrete discrimination claims. The standard for the hostile work environment is set forth in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). As to the 300-day EEOC charge limitation period, a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [300-day] time period." A hostile work environment claim is time-barred only when the acts occurring more than 300 days before the charge "had no relation" to the acts within 300 days of the EEOC charge. Id. at 118.

Applying this standard to the facts here, Plaintiff has alleged a continuing hostile work environment that is not time-barred by the statute of limitations. As discussed more fully below, the harassment Plaintiff has alleged qualifies as a continuing pattern, and as such her hostile work environment claim cannot be dismissed on this basis. See Austion, 244 Fed. Appx. at 649 ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.").

-15-

## C. Denial of Promotion Claims

Plaintiff has alleged three discrete denial of promotion sex discrimination claims: (1) denial of promotion to the DOR position in 2005; (2) denial of promotion to Master IV status in 2006; and (3) denial of promotion to the DOR position in 2007 that was concurrent with her termination. As noted above, the first denial of promotion to the DOR position in 2005 is time-barred.

Title VII provides that it is unlawful for an employer to discriminate against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In a disparate treatment case of sex discrimination, a plaintiff is "required to demonstrate that the adverse employment decision would not have been made 'but for' her sex." Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1995). A plaintiff may prove discrimination in two ways. She may either present direct evidence, or indirect evidence of discrimination.

In the absence of direct evidence of discrimination,[2] cases are subject to the McDonnell Douglas three-part, burden-shifting analysis: (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); accord Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kent County Sherriff's Ass'n v. Kent County, 826 F.2d 1485, 1492 (6th Cir. 1987) (citing McDonnell Douglas and Burdine). The burden of persuasion

---

[2] It should be noted that the McDonnell Douglas formulation for establishing a prima facie case of discrimination is inapplicable to direct evidence cases. As one court stated, "[d]irect evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock v. Metal Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985).

-16-

remains with the plaintiff at all times. <u>Canitia v. Yellow Freight Sys., Inc.</u>, 903 F.2d 1064, 1066 (6th Cir. 1990).

In order to establish a prima facie case of discrimination for failure to promote, a plaintiff must show: (1) she is a member of a protected class; 2) was qualified for the job; 3) suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. <u>Newman v. Federal Exp. Corp.</u>, 266 F.3d 401, 406 (6th Cir. 2001) (citing <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995)).

Given the facts here, Plaintiff has properly alleged a prima facie case for discrimination with regard to the second and third denial of promotion claims. Plaintiff has offered at least some evidence that she is a member of a protected class, was qualified for the Master IV and DOR promotions, was denied those promotions, and the promotions were given to men.

Once these elements are proven, "[t]he burden... shift[s] to the defendant articulate some legitimate, nondiscriminatory reasons for the plaintiff's rejection." <u>McDonnell Douglas</u>, 411 U.S. at 802. "The defendant must clearly set forth, through introduction of admissible evidence, reasons for its actions...." <u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981). The defendant "need not persuade the [trier of fact] that it was actually motivated by the proffered reasons," 450 U.S. at 254, but "only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision was not motivated by discriminatory animus." <u>Id.</u> at 257. The defendant's burden is, thus, one of production; not persuasion. <u>Id.</u> at 254-55. Although the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

-17-

against [her] remains at all times with the plaintiff." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Once the defendant meets this burden, the plaintiff must show that the employer's proffered reason is pretextual. Id. "It is not enough to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." Id. at 519. But "[a] plaintiff does not need to introduce additional evidence of discrimination to prevail on the merits." Kline v. Tennessee Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997). Discrimination can be found once a prima facie case is established along with the disbelief of the proffered reasons for the adverse employment action. Id. To challenge the employer's explanation for an adverse employment action, the plaintiff must show, by a preponderance of the evidence, "either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1993).

Under the McDonnell Douglas framework, the Defendant has offered legitimate, nondiscriminatory reason for its actions, and the Plaintiff has failed to offer any evidence beyond bare assertion that the Defendant's proffered reason was pretextual. The Defendant contends that Plaintiff was denied promotion to Master IV status in 2006 because she had failed to accrue the required number of student recruits. After Plaintiff appealed that determination, the Defendant investigated and found that her recruits had all been credited to the correct time periods, and therefore denied the promotion at that time. In fact, Plaintiff later did achieve Master IV status. (Docket Entry No. 58, Plaintiff's Responses to Defendant's Statement of Material Facts, at ¶ 17).

Plaintiff has not offered any evidence that the denial of her promotion to Master IV status

-18-

was based on sex discrimination.  As such, the Defendant is entitled to summary judgment with respect to the Master IV status denial of promotion claim.

As to the denial of promotion to the DOR position in 2007, the Defendant has also offered a legitimate, nondiscriminatory reason for its actions.  Namely, the Defendant contends that Plaintiff was terminated for her inappropriate racial remarks per ITT policy, and therefore the Plaintiff was not considered for the DOR position after her termination.  Plaintiff has offered no evidence demonstrating that this explanation is merely a pretext for ITT's actions regarding its refusal to promote her to the DOR position.  Thus, Defendant's motion for summary judgment should be granted as to all of Plaintiff's denial of promotion claims.

### D. Hostile Work Environment

Plaintiff has also asserted a claim against the Defendant for hostile work environment. To establish a prima facie case of sexual harassment or a sexually hostile work environment under Title VII, the plaintiff must prove that: (1) she is a member of a protected class; (2) she were subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the defendants failed to take reasonable care to prevent and correct any sexually harassing behavior.  Bowman v. Shawnee State Univ., 220 F.3d 456, 462-63 (6th Cir. 2000) (affirming summary judgment despite proof of "a litany of perceived slights and abusive" including sexually offensive language).  To be actionable, sexual harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.  Id.  The Court is also required to consider if the plaintiff engaged in similar conduct.  Id.

Here, Plaintiff has failed to state a prima facie claim for a sexually hostile work

-19-

environment, as she has offered no evidence that any alleged harassment was based on her sex. "Title VII does not prohibit all verbal or physical harassment in workplace, but is directed only at discrimination 'because of' sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). "[W]orkplace harassment . . . is not automatically discrimination 'because of sex' merely because the words used have sexual content or connotations . . . [rather,] [t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of other sex are not exposed." Id.

The only allegations made by the Plaintiff regarding harassment include threatening telephone calls and harassment from co-workers, generally described by Plaintiff as "taunting" and "comments," though Plaintiff does not specify what this included with the exception of being told that she "wasn't a team player." Plaintiff also alleges that the harassment included pictures and daytimers disappearing from her desk. Finally, Plaintiff has cited to Paladini's alleged telephone conversations in the office with her husband that were of a sexual nature, although Plaintiff did not allege this in her EEOC charge.

In a word, Plaintiff's allegations do not suggest in any way that the alleged harassment was based on sex or that she was exposed to disadvantageous terms or conditions of employment to which members of other sex are not exposed. As such, Plaintiff has failed to state a prima facie case for hostile work environment. The Court thus concludes that Defendant's motion for summary judgment on Plaintiff's hostile work environment claim should be granted.

### E. Discriminatory and Retaliatory Discharge

Plaintiff has also asserted claims for discriminatory and retaliatory discharge in violation of Title VII. To establish a prima facie claim for discriminatory discharge, Plaintiff must show:

-20-

(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. Peltier v. United States, 388 F.3d 984, 987 (6th Cir. 2004). Additionally, the Sixth Circuit has held that in discharge cases, plaintiff's must also include proof that the discharge was "without valid cause, and that the employer continued to solicit applications for the vacant position." Potter v. Goodwill Indus., 518 F.2d 864, 865 (6th Cir. 1975); Morvay v. Maghielse Tool and Die Co., 708 F.2d 229, 233 (6th Cir. 1983). Finally, discriminatory discharge claims are subject to the same burden shifting analysis under McDonnell Douglas outlined above.

Here, Plaintiff cannot establish a prima facie case for discriminatory discharge. Plaintiff's termination had a valid cause, namely the racial comments that her colleagues described to ITT's internal investigator. Even assuming, arguendo, that Plaintiff had been able to establish a prima facie case for discriminatory discharge, Defendant has offered a legitimate, nondiscriminatory reason for terminating her employment (the racial comments). Plaintiff has not offered any evidence to rebut this explanation as a pretext as is required under McDonnell Douglas. As such, the Court concludes that Defendant's motion for summary judgment with regard to the discriminatory discharge claim should be granted.

Finally, Plaintiff also cannot establish a prima facie case for retaliatory discharge under Title VII. To establish prima facie retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to Defendants; (3) Defendants thereafter took adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action." Simoudis v. Ford Motor Co., 29 Fed.

-21-

Appx. 314 (6th Cir. 2002); Hafford v. Seidner, 187 F.3d 506, 515 (6th Cir. 1999). The Court of Appeals has held that this causal connection may be demonstrated by the proximity of the adverse action to the protected activity. Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir. 1987) (citing Burrus v. United Telephone Co., 683 F.2d 339, 343 (10th Cir. 1982)); see also Croushorn v. Bd. of Trustees of the University of Tennessee, 518 F. Supp. 9, 19 (M.D. Tenn. 1980).

Plaintiff carries the ultimate burden of proving retaliation. If a prima facie case is established, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Jackson v. Pepsi Cola, Dr. Pepper Bottling Co., 783 F.2d 50, 54 (6th Cir. 1986) (citing Burrus v. United Telephone Co., 683 F.2d 339, 343 (10th Cir. 1982), cert. den., 459 U.S. 1071 (1982)). The plaintiff may rebut defendant's legitimate action by demonstrating the articulated reason was a mere pretext for retaliatory discrimination. Id.

Plaintiff alleges that she was terminated to avoid promoting her after she expressed interest in the DOR position in 2007. However, the undisputed facts are that the investigation into Plaintiff's alleged racial comments began (if only slightly) before Plaintiff sent her letter of interest regarding the DOR position. Additionally, the personnel investigating the incident (and approving the investigation to begin with) were separate from the decisionmakers who had knowledge of Plaintiff's interest in the DOR position. As such, Plaintiff cannot prove the second and fourth elements of her retaliatory discharge claim.

Assuming, arguendo, that Plaintiff could allege a prima facie claim for retaliatory discharge, her claim would still fail under the McDonnell Douglas burden shifting framework. The Defendant has offered proof that Plaintiff was terminated due to her racial comments that violated company policy, and as noted above, Plaintiff has offered no evidence beyond bare

-22-

assertions that this explanation was merely a pretext for her termination. As such, Plaintiff's retaliatory discharge claim must fail. The Court therefore concludes that the Defendant's motion for summary judgment should be granted with regard to Plaintiff's discriminatory and retaliatory discharge claim.

For the reasons stated above, the Defendants' motion for summary judgment should be granted.

An appropriate Order is filed herewith.

Entered this the _9th_ day of June, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge

-23-